# Richmond.

GREEN, TRUSTEE, ET AL. v. WOOLDRIDGE, TRAVERS & CO. ET AL.

February 9th, 1893.

1. TRUST FUND—*Capital—Encroachments upon.*—Courts look with disfavor upon the assumption by trustees of authority to encroach upon the capital of the trust estate. The burden is on the trustee, or those claiming the benefit of his action, to show the necessity for such encroachment, and that it was impossible to apply to the court for directions.

2. IDEM—*Case at bar.*—G, as trustee, bought fertilizer, giving his note and pledging his tobacco crop in payment. The beneficiaries were his wife and children, who lived on their own estate. He occupied the trust estate, and did not contribute to their support. In the suit to enforce payment of the note—

HELD:

> No necessity for encroachment upon the capital of the trust estate having been established, the same could not be subjected to its payment.

Appeal from decree of circuit court of Halifax county, rendered at November term, 1890, in a cause wherein Wooldridge, Travers & Co. and others were complainants and W. E. Green, trustee, and others were defendants. The decree being in favor of complainants, the defendants appealed. Opinion states the case.

*John W. Riely* and *Wood Bouldin*, for appellants.

*W. W. Henry*, for appellees.

LACY, J., delivered the opinion of the court.

The appellees filed their bill in the circuit court of Charlotte county, Virginia, from which court it was subsequently removed to the circuit court of Halifax county, by which the said decree was rendered on the first Monday in February, 1884, against W. E. Green, trustee, to enforce the payment of a guano or fertilizer note of $659, dated May 15, 1882, and payable on or before the 1st day of May, 1883, and pledging his tobacco crop—to be delivered, so far as required, and sufficient to pay the said note—signed W. E. Green, trustee.

The bill charged that the said Green was acting in this transaction as trustee under his father's will, but of this the plaintiffs did not claim to be certain. That the said Green did not deliver his crop of tobacco, as promised in the said note, but sold it and used the proceeds; and their debt was entirely unpaid.

They alleged that ample personal estate—consisting of *other crops*, stock, and household and plantation utensils— remained in the hands of the said Green, as trustee, to pay said note, and that the rents of the real estate so held by him would soon pay the same; and that said Green was personally insolvent. And the bill prayed that the said trustee be required to answer on oath, and be made to disclose the trust subject in his hands, and that the same be subjected to the payment of their said note, &c.

A copy of the will of William B. Green, the father of the said trustee, was exhibited, and it appears that the said testator devised the tract of land called Greenwood, on which he resided, to the said trustee, "for the use and benefit of the wife and children of my said son, and such wife as he may hereafter have, and such child or children as may hereafter be born to him, to be applied in the manner hereinafter directed, for and during the life of my said son," and at his death as he should by will appoint—the said estate not to be liable in any way for the debts of the son; and the son was not

to inherit from any child which might die during his lifetime.

It was further provided that the trustee should manage such land in such manner as he should think best; and authority was vested in him to sell and convey said land, or any part thereof, and reinvest the proceeds in such other property as he might deem proper, to be held under the same trust, &c. And the testator bequeathed one third of the residue of his estate to the said son, to be held on the same trusts and uses, and on the same conditions as was provided as to the land.

The circuit court (in Charlotte county), taking the bill for confessed, ordered an account of the plaintiffs' debt, and an account of the trust estate.

The commissioner reported the debt of the plaintiffs at $715.01, the real estate, Ward's Fork, (not Greenwood,) at $7,622, and personal property, assessed to W. E. Green personally, (not as trustee,) at $1,520; and reported that he (the said commissioner) was unable to determine whether the said property was liable for the plaintiffs' debt or not.

Whereupon the plaintiffs amended their bill, saying that the amount of their debt being ascertained, and the trust fund ascertained, they were now informed that Mrs. Green was dead, named the children (who are the appellants), and asked that they, being the beneficiaries, might be made parties defendant—five of them being infants.

Process being executed, an account was again ordered as before and reported of the plaintiffs' debt and the trust subject, and annual rental value of the same—the latter being stated at $550—the other accounts being varied in amounts, but it is not material to recite the changed valuation; and the deposition of W. E. Green, trustee, returned to support the said report and account, he saying that Greenwood had been sold and Ward's Fork purchased with the proceeds.

Before acting on this the circuit court removed the former guardian *ad litem* who had been appointed, and appointed a

lawyer such guardian *ad litem*, and subsequently (the date not recorded) removed the cause to the circuit court of Halifax county, on the motion of the defendants. The removal having been consummated, the guardian *ad litem* filed formal answers for the infants.

And the appellees, J. G. Tinsley & Co., having filed their petition to have payment of their debt, an account was ordered as to this, as heretofore concerning the Wooldridge, Travers & Co. debt—the Tinsley debt being for $90, and evidenced by a similar fertilizer bond as that of Wooldridge, Travers & Co., above mentioned. The commissioner made another report, and accounts were returned of the trust estate, which appears to have decreased in value very much since the last report.

This last commissioner (Leigh) reported that these debts were contracted by W. E. Green as trustee under his father's will, and that these fertilizers were used on the Ward's Fork land, which was held in trust under the said will of the father, W. B. Green, deceased; and returned the deposition of M. M. Martin, who proved that the Ward's Fork plantation was held by the said trustee in lieu of the Greenwood plantation—or tended to prove this; and the deposition of W. W. Webb was returned to support the conclusion that the fertilizer in question was used on the trust estate, the said trustee living separate and apart from his wife and children, who had purchased and resided on the Greenwood estate.

And on the 15th of November, 1890, the circuit court rendered the decree complained of.

The guardian *ad litem* having excepted to Commissioner Leigh's report, because it did not show under what trust the debts were contracted and the fertilizers used, the decree overruled these exceptions, confirmed the commissioner's report, both of Leigh and the former report of Commissioner Eggleston, and decreed that the said Green, trustee, should pay the said debts; and directed executions to issue *at once*, and sale of the

trust estate, so far as it was personalty, be delayed sixty days, subject to the execution lien ; but if these debts were not paid within sixty days, the sheriff was directed to sell the crops and other personal estate held or controlled by the said Green, trustee under the will of William B. Green, deceased, sufficient to satisfy the said execution.

The property developed by the proceedings herein was such personal property as is usually found on a farm, but no crops are reported in any amount whatever.

So the effect of the decree was, to subject the *corpus* or capital of the estate to pay the debt contracted by the trustee.

The appellants being advised that under the terms of the will of William B. Green, creating the trust for the support of the wife and children of the trustee, and not to be in any way liable to his debts, that the trustee, in his management of the trust fund, had power only to bind the income, and was not allowed to break in on the principal or capital of the trust fund, applied for and obtained an appeal to this court.

In Perry on Trusts, it is said : " It is a settled rule that trustees for infants should never, on their own authority, break in upon the capital of the trust fund for the maintenance, and seldom for the advancement, of their ward. This is a rule for the protection of children, and, if trustees break it, their accounts will be disallowed, although the particular case is a hardship, as it is better that a single individual should suffer a hardship, which he might have avoided, than that the interest of all infants should be endangered. Sir William Grant expressed a doubt whether the court itself had power to authorize the expenditure of the trust fund for the infant's support and advancement. It is now, however, well established that the court has such power, and will exercise it with caution in a proper case. But if the trustee exercises the power by breaking in upon the trust fund for mere maintenance, without leave of the court, he will be compelled to

replace it.   It has been said that a trustee may pay from the capital fund upon his own authority in case of necessity; but it would not be safe to follow this.   The burden would be on the trustee to prove a case of necessity, and that it was impossible to apply to a court for directions, for courts look with disfavor upon the assumption of such authority by guardians and trustees.   When such a case can be made, the trustee will be allowed the amount paid out in his accounts."   Section 618, 2 Perry on Trusts.

This language was cited approvingly in a late case in this court—*Sedgwick, &c.,* v. *Taylor,* 84 Va. 822, 823.

The burden is placed by law on the trustee, or those claiming the benefit of his action, to show that the exigencies of the situation justified the encroachment made by the trustee in this case upon the capital of the trust estate; and until this was done the court ought not to have sustained the encroachment.   *Bank of Greensburgh* v. *Chambers,* 30 Gratt. 202; *Pracht* v. *Lange,* 81 Va. 711; *Sedgwick* v. *Taylor, supra.*

In this case the burden thus placed by the law upon the trustee is not borne; the necessity for the encroachment is not established.   There is no evidence in the record showing, or tending to show, that the expenditure was either necessary or proper—there is no effort made to show it—while, on the contrary, it appears that the trustee had left his wife and children on their own land, where he did not reside with them, and was living apart from them on a place, alone; and there is no evidence to show that he contributed to their maintenance and support in any way whatever, or to any degree.   He cultivated this estate, and used and occupied it, while his wife and his children lived apart, and not with him, nor under his care and protection.   It was not proved—and the court will not presume, without any evidence—that the necessities of the beneficiaries required that the capital of the estate should be encroached upon for their support and maintenance.

The decree of the circuit court of Halifax county, directing a sale of the capital of the trust estate to satisfy the debts in question, was erroneous; the crops only should have been held so liable, and properly subjected to the satisfaction of the said debts.

The said decree will, therefore, be reversed and annulled, and the cause remanded to the said circuit court of Halifax county for further proceedings to be had therein, in order to a final decree in accordance with this opinion.

DECREE REVERSED.